IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
NORTHERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA | PLAINTIFF |
| V. | CAUSE NO. 3:12-CR-116-CWR-FKB-5 |
| WALTER E. BELL | DEFENDANT |

**ORDER**

Before the Court is Defendant Walter E. Bell's motion for compassionate release. Docket No. 441. He seeks to reduce his 140-month sentence to time served because of risks associated with the COVID-19 pandemic. For the reasons that follow, Bell's motion is granted.

**I.      Factual and Procedural History**

In June 2013, Bell pled guilty to one count of possession with intent to distribute 28 grams or more of crack cocaine. Minute Entry of June 13, 2013. In August 2013, the undersigned sentenced Bell to 140 months in prison and four years of supervised release, which was entered as a matter of judgment on September 4, 2013, and was to run concurrently with a 42-month sentence Bell received for participating in a counterfeit scheme. Minute Entry of Aug. 29, 2013; Docket No. 254; *see also United States v. Bell*, No. 3:11-CR-84-CWR-FKB-1, Docket No. 21 (S.D. Miss.).

In April 2020, Bell submitted a motion, *pro se*, for compassionate release pursuant to 18 U.S.C. § 3582, in light of the COVID-19 pandemic. Bell seeks a sentence reduction to time served in light of his health risk and his projected release in early 2023.

In a telephonic conference on September 2, 2020, this Court learned that BOP released Bell to serve his sentence on home confinement, while having to report to Dismas Charities until 2023. Minute Entry of Sept. 2, 2020. This Court took Bell's pending motion under advisement.

*Id.* This Court then held a hearing on the motion on February 16, 2021. Minute Entry of Feb. 16, 2021.

## II.     Legal Standard

Bell's request is brought under 18 U.S.C. § 3582. While the Court generally "may not modify a term of imprisonment once it has been imposed," 18 U.S.C. § 3582(c), it may "reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment)." *Id.* § 3582(c)(1)(A). The Court may grant such a request if it finds that "extraordinary and compelling reasons warrant such a reduction . . . and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission," *id.*, "after considering the factors set forth in section 3553(a) to the extent that they are applicable." *Id.*

The § 3553(a) factors include "the nature and circumstances of the offense and the history and characteristics of the defendant," as well as the need for the sentence imposed "to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense," "to afford adequate deterrence to criminal conduct," and "to protect the public from further crimes of the defendant." 18 U.S.C. § 3553(a).

For the Court to proceed to such an analysis, the defendant must have "fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf" or there must have been a "lapse of 30 days from the receipt of such a request . . . ." 18 U.S.C. § 3582(c)(1)(A); *see United States v. Franco*, 973 F.3d 465, 467 (5th Cir. 2020).

**III.    Discussion**

    **A.    Exhaustion**

At the time of its response in opposition to Bell's motion in April 2020, the United States argued that Bell had not yet exhausted his administrative remedies, as required by 18 U.S.C. § 3582. Docket No. 443. In his reply, Bell claimed that he had satisfied this requirement when he sent a letter to the warden but had not received a formal response. Docket No. 448.

Nearly a year later, exhaustion is no longer an issue in this case. Bell's removal to home confinement by BOP necessarily suggests that he asked BOP for administrative relief. In addition, the government indicated in the February 16, 2021 hearing before this Court that its remaining opposition to reducing Bell's sentence related to safety concerns, which are addressed below, as opposed to any issue regarding exhaustion.

    **B.    "Extraordinary and Compelling Reasons"**

"While many courts have found that the threat of COVID-19 alone is not sufficient to warrant compassionate release, the 'extraordinary' remedy of compassionate release may be applied to inmates whose situation is 'particularized' as defined in the policy guidelines [from the Sentencing Commission, referenced in 18 U.S.C. § 3582]." *United States v. Guston*, No. 3:12-CR-116-CWR-FKB-3, 2021 WL 149018, at *2 (S.D. Miss. Jan. 15, 2021) (citing *United States v. Feiling*, No. 3:19-CR-112 (DJN), 2020 WL 1821457, at *7, 453 F. Supp. 3d 832 (E.D. Va. Apr. 10. 2020)). That is the case here.[1]

---

[1] As this Court has stated previously, the United States Sentencing Guidelines "outline[] four circumstances that constitute 'extraordinary and compelling reasons' and thus warrant a sentence reduction. These are: (1) the defendant's medical condition; (2) the defendant's age; (3) family circumstances; and (4) other reasons as determined by the Director of the BOP." *Guston*, 2021 WL 149018, at *2. This list is not exhaustive. *Id.* at *2 n.1. Additionally, while the Sentencing Commission's policy statement "provides helpful guidance," *United States v. Kelly*, No. 3:13-CR-59-CWR-LRA-2, 2020 WL 2104241, at *7 (S.D. Miss. May 1, 2020) (quoting *United States v. Beck*, 425 F. Supp. 3d 573 (M.D.N.C. 2019)), due to the fact that it has not been amended since the First Step Act, *id.*, "numerous other courts who have ruled on this issue have held that they have the 'discretion to determine what constitutes an 'extraordinary and compelling reason[ ]' on a case by case basis, and reliance on the policy statement

Bell is moderately obese. *See* Docket No. 448.² That is a preexisting health condition that, as the government has acknowledged in other cases, "according to the CDC places [defendant] at risk of severe illness from COVID-19, and provides a sufficiently 'extraordinary and compelling reason' for release." *United States v. Carter*, No. CR 18-21-SDD-RLB, 2021 WL 37677, at *2 (M.D. La. Jan. 5, 2021); *see also United States v. Williams*, No. CR 15-291, 2020 WL 5258480, at *3 (E.D. La. Sept. 3, 2020) ("As the government concedes . . . [obesity] is an extraordinary and compelling reason . . . .").³

The government has in these other cases correctly noted the present state of public health guidance. The Centers for Disease Control has listed obesity, whether severe or not, as a condition that puts individuals "at increased risk of severe illness." *People with Certain Medical Conditions*, Centers for Disease Control, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html (last visited Feb. 16, 2021). Obesity is in a category of risk more significant than many—or perhaps any—other conditions. For example, while those with hypertension "*might* be at an increased risk for severe illness," *id.* (emphasis added), new research suggests that obesity is the number-one preexisting cardiometabolic condition associated with severe COVID. *See* Sue Hughes, *Most Severe COVID Tied to Four*

---

may be helpful, but not dispositive.'" *Id.* (quoting *United States v. Perdigao*, No. CR 07-103, 2020 WL 1672322, at *2 (E.D. La. Apr. 2, 2020)).

² In the February 16 hearing before this Court, Bell's counsel shared that Bell has claimed he also has high blood pressure, though he is not taking medication to manage it and he has not been diagnosed with hypertension.

³ This conclusion is consistent with the fact that other, less severe conditions can also be independently sufficient to warrant compassionate release. For example, courts "have also granted compassionate release for defendants suffering from hypertension alone," *Guston*, 2021 WL 149018, at *3, given the data illustrating a strong correlation between hypertension and poor COVID-19 outcomes. *Id.* (citing *United States v. Salvagno*, 356 F. Supp. 3d 420, 439-40 (N.D.N.Y. 2020); *United States v. Lavy*, 17-CR-20033, 2020 WL 3218110, at *4 (D. Kan. June 15, 2020); *United States v. Burke*, No. 17-CR-3089, 2020 WL 3000330, at *2 (D. Neb. June 4, 2020); *United States v. Foreman*, No. 19-CR-62, 2020 WL 2315908, at *3-4 (D. Conn. May 11, 2020); *United States v. Pena*, No. 15-CR-551, 459 F. Supp. 3d 544, --- (S.D.N.Y. May 8, 2020); *United States v. Pabon*, No. 17-CR-165, 458 F. Supp. 3d 296, --- (E.D. Pa. May, 4, 2020); *United States v. Soto*, No. 18-CR-10086, 2020 WL 2104787, at *2 (D. Mass. May 1, 2020); *United States v. Scparta*, No. 18-CR-578, --- F. Supp. 3d ---, 2020 WL 1910481, at *9 (S.D.N.Y. Apr. 20, 2020)).

*Cardiometabolic Conditions*, MEDSCAPE (Feb. 25, 2021) ("The authors estimate that among the 906,849 total COVID-19 hospitalizations that had occurred among US adults as of November 2020, 30% were attributable to obesity; 26% to hypertension; 21% to diabetes; and 12% to heart failure.").[4] Given the CDC's determinations of risk, this Court does not see why obese individuals should be treated any differently than those suffering from hypertension alone and whose motions for compassionate release were granted. *See* note 3, *supra*. Obesity alone is enough to push an individual up the priority list to receive a COVID-19 vaccine in Mississippi. *Who Is Eligible For Vaccination*, Miss. State Dep't of Health, https://msdh.ms.gov/msdhsite/ _static/14,22816,420,976.html#eligible (last visited Feb. 16, 2021).

Obesity alone, though, is not what makes Mr. Bell's motion so extraordinary and compelling as to warrant relief. The Court is struck by the fact that, unlike every other compassionate release movant to have come before this Court, including pre- and post-exhaustion movants, BOP determined that Mr. Bell's particular situation warranted his immediate release to home confinement.[5] If "extraordinary" is defined in Black's Law Dictionary as "beyond what is usual, customary, regular, or common," *United States v. Cantu*, 423 F. Supp. 3d 345, 352 (S.D. Tex. 2019) (brackets and citation omitted), then Mr. Bell's early release is extraordinary. BOP's permission for home confinement "is both the touchstone of the determination and rare," *id.* at 353, as it suggests something special about Mr. Bell's risk

---

[4] Significant developments in scientific insights concerning COVID-19 have emerged since the last filings took place in this matter. Given the novelty of COVID-19 and rapid changes in our understanding of the disease, Bell will not be penalized for being unable to incorporate unforeseen insights into his filings in June. *See, e.g., As 2020 Comes To An End, Here's What We Still Don't Know About COVID-19*, SCIENCENEWS (Dec. 9, 2020, 6:00 AM), https://www.sciencenews.org/article/coronavirus-covid-19-pandemic-questions-2020. Bell *did* cite the best information available to him concerning the relationship between obesity and COVID-19 at the time of filing his reply to the government's response in June. Docket No. 448 at 11-12.

[5] *See, e.g.*, *United States v. Mason*, No. 3:17-CR-104-CWR-LRA-3, 2020 WL 3065303, at *1 (S.D. Miss. June 9, 2020) (describing BOP's non-adjudication of movant's compassionate release claim, when movant was HIV positive and had asthma).

profile—both in terms of his particular risk of sustaining severe consequences from COVID-19, and any risk he poses to the community from being released.[6] The Court declines to disagree with BOP's assessment of Mr. Bell's case.

For these reasons, this Court concludes that Bell presents "extraordinary and compelling reasons [that] warrant the reduction." 18 U.S.C. § 3582(c)(1)(A)(i).

C.      The 18 U.S.C. § 3553(a) Factors

Finally, this Court turns to the last part of its analysis, which includes a consideration of "the factors set forth in section 3553(a) to the extent that they are applicable." 18 U.S.C. § 3582(c)(1)(A). The factors include "the nature and circumstances of the offense and the history and characteristics of the defendant," as well as "the need for the sentence imposed . . . to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense," "to afford adequate deterrence to criminal conduct," and "to protect the public from further crimes of the defendant." 18 U.S.C. § 3553(a).

As mentioned above, the Court's analysis is made easier by the fact that BOP released Bell to home confinement to serve his sentence. To date, BOP has articulated no rationale through the U.S. Attorney's Office or to Bell's counsel as to the ultimate basis of its decision to release Bell to home confinement. The government has, however, supplemented the record with documentation regarding his early release, including a form stating that "Bell is being referred for Home Confinement based on the Attorney General's COVID-19 Pandemic memorandum." Institutional Referral for CCC Placement, at 2. As such, this Court must assume that BOP

---

[6] It is also possible that BOP released Bell (and, perhaps, others) from FCI Forrest City because the facility itself put Bell at an increased risk of exposure, and BOP determined that the facility could not properly deal with those increased risks. *See, e.g., More than 500 Inmates with COVID-19 Cases at Forrest City Prison*, WMC ACTION NEWS 5 (June 8, 2020), www.wmcactionnews5.com/2020/06/08/more-than-inmates-with-covid-cases-forrest-city-prison/. We do know others have requested release from this facility and been denied. *E.g.*, *United States v. Adams*, No. 3:18-CR-88-CWR-LRA, Docket No. 44 (S.D. Miss. Sept. 11, 2020). Bell's release is extraordinary.

released Bell consistent with the totality-of-the-circumstances approach outlined by the Attorney General in the spring of 2020 (and which the government cited in its filing, *see* Docket No. 443 at 8-9), which highlighted several non-exhaustive factors that BOP should consider in light of COVID-19. *See* Memorandum from the Attorney General to Director of the Bureau of Prisons (Mar. 26, 2020), https://www.bop.gov/coronavirus/docs/bop_memo_home_confinement.pdf. Such factors included "an assessment of the inmate's risk factors for severe COVID-19 illness" and the "inmate's crime of conviction, and assessment of the danger posed by the inmate to the community." *Id.* at 2.

The supplemented record indicates that BOP released Bell only after determining that his conduct while in prison and his prior record presented no danger to others or the community, and thus presented little reason to believe that he would commit future crimes that would endanger others. In other words, BOP's decision is solid evidence in and of itself that Bell satisfies the relevant § 3553(a) factors as they concern his history and characteristics.

Even so, the Court will conduct an independent analysis by first turning to Bell's history and characteristics, as well as the nature of the underlying offense. First, the Court notes that Bell has already been residing at home without incident, which, according to Bell's counsel, has included regular drug tests. The crime for which Bell is serving time was nonviolent, and Bell's BOP forms addressing his early release state that his "criminal history and inmate disciplinary record reveal no charges or convictions involving violence or sexual offenses." Institutional Referral for CCC Placement, at 2. Bell's referral also notes that he completed a non-residential drug education program in May 2018. *Id.* at 1. In light of Bell's history and characteristics, then,

Bell does not pose a danger to others' safety or to his community. Similarly, there is no reason to believe that Bell will commit future crimes that will endanger the public.[7]

Much as Bell's history and characteristics illustrate a lack of evidence that he is a threat to his community or that he will reoffend, they also illustrate that it is not necessary that he serve the remainder of his sentence in either the interest of deterrence or in light of the nature of his crime. He has served the overwhelming majority of a lengthy sentence, and his conduct while serving his sentence led to his classification as "a ten point Low Security inmate" with a "PATTERN Recidivism score of Low." *Id.* at 2. He has completed an impressive number of education courses while incarcerated. *See* Docket No. 448, Exhibit A, at 1-2. There is no reason to believe that any further time serving his sentence would result in an additional deterrent effect that it has not already generated, nor is there reason to believe that the nature of his offense justifies serving the rest of his sentence when he has already served so much of it.

Lastly, this Court notes that its decision to reduce Bell's sentence to time served leaves in place his four-year period of supervised release, which contains numerous safeguards to public safety itself. For these reasons, this Court finds that Bell satisfies the § 3553(a) factors.

**IV.     Conclusion**

For the foregoing reasons, the motion for compassionate release is granted. Walter Earl Bell is resentenced to time served. Bell's original four-year term of supervised release and its concomitant requirements remain in place.

**SO ORDERED**, this the 9th day of March, 2021.

s/ Carlton W. Reeves<br>
UNITED STATES DISTRICT JUDGE

---

[7] Bell has completed his 42-month sentence for his participation in a counterfeit scheme, which ran concurrent to the 140-month sentence he is still serving. *See* Docket No. 254. While the counterfeit scheme is relevant to Bell's history, this Court places significant weight on the fact that Bell has done his time for the offense. Undoubtedly, the BOP considered Bell's entire criminal history and determined that he should be released to home confinement.